## SCAMMON *v.* SCAMMON *& a.*

Under the general rule relative to notice to take depositions, an additional day is not required, unless for twenty full additional miles' travel.

An admission by a party, made for the purpose of preventing the attendance of witnesses, will, in case the construction is doubtful, be construed against such party.

The admissions of the holder of a note that the maker owed him nothing, are evidence for third persons that nothing is due on the note.

On proof that warrants for county taxes cannot be found, evidence that warrants were received, and that the tax was made for the just proportion of the town, is admissible to show the existence and contents of such warrants.

TRESPASS *de bonis asportatis.* The general issue was pleaded, with a brief statement, justifying the taking, as a distress for non-payment of a tax assessed by the defendants, as selectmen of Stratham.

The following objections were made to the evidence in support of the defence : It appeared that the plaintiff gave in an invoice, in which $1586 was set down as money at interest. The defendants, in making the tax, entered in the tax-book the invoice given in by the plaintiff, and in the column of money at interest, under the $1586 given in, they added " wilfully omitted $800, taxed at $3000," and assessed the tax on the amount of the invoice and this sum.

It was submitted to the jury, whether the plaintiff had wilfully omitted from his invoice money on hand or at interest to the amount of $750. On this question the defendants introduced a writing, signed by the plaintiff, as follows : " I hereby acknowledge that in the year 1849 and 1850, B. Norris was owing me $110 ; J. G. Webb, $640 ; J. S. Webb, $740 ; C. M. Norris, $425 ; J. Wiggin, $225 ; and J. E. Odell, $200 ; and I agree that the above named sums of money were due and owing to me in said years, and that this writing may be used on the trial, in the same way as if the above named persons were summoned to court and testified to the same." It was objected that this paper was not competent evidence of money at interest to those amounts on the first of April, 1849, but the court instructed the jury otherwise.

Evidence was introduced by the defendants, tending to show that the plaintiff's wife inherited considerable estate from her father, who died, leaving Sophia Gordon, his widow, and the plaintiff's wife his sole heir, and that the plaintiff purchased the widow's right to the estate for $10,000, giving his note therefor, which was afterwards given up for an obligation, as follows :

" *March* 28, 1846.

" Due Sophia Gordon ten thousand dollars, to be paid as wanted for her support. If no part is wanted for her support, nothing is to be paid. STEPHEN SCAMMON."

It was proved that said Sophia, ever since the date of this writing, resided in the plaintiff's family, and was supported by him. The plaintiff objected to the admission of this agreement, but the court admitted it.

The defendants offered the deposition of J. M. Way, taken in Boston, November 5, 1855, at 10, A. M. The plaintiff·did not attend the caption. The notice to take the deposition at that time and place, was served on the plaintiff, October 29, 1855, and another notice to attend the taking of other depositions, at Stratham, November 6, at 11, A. M. Plaintiff resided in Stratham, more than fifty miles from Boston, four miles from the place of the other caption, and twelve from his attorney's residence at Portsmouth. Three trains of cars run daily each way from Portsmouth to Boston, and from Exeter to Boston; the station at Exeter being six miles from the plaintiff's house. The plaintiff objected to the deposition, but it was admitted.

The plaintiff, to show his indebtedness on the 1st of April, 1849, offered evidence of a promissory note, dated April 1, 1835, for $1601, payable to James Scammon, his father, on demand, with interest. On this note were twenty-two payments indorsed, the first, June 4, 1836, the last, February 2, 1841, amounting to $1601. To prove that nothing was due on this note, a witness for the plaintiff, on cross-examination, testified that April 1, 1854, he assisted James Scammon in reckoning up the amount of his money at interest, with a view to giving in his invoice, and this note, or any balance due on it, was not included, though said James had it in his possession. The plaintiff objected to this evidence, but it was admitted.

It appeared that defendants assessed the plaintiff for a State and County tax. The defendants proved that warrants from the State and County treasurers were received by the selectmen, and passed to the defendants with other town papers, in March, 1849; but on search, in all proper places, they could not be found. The witness who testified to the receipt of these warrants was unable to state more of their contents than that they purported to be from the State and County treasurers, directing a State and County tax to be assessed for that year. The evidence was objected to, but the court instructed the jury that if, upon this evidence, they were satisfied that such warrants were issued to and in the hands of the selectmen, when the tax

was assessed, and that the warrants directed the selectmen to assess the legal proportion of the town, as the amount assessed was conceded to be such legal proportion, the evidence was sufficient for them to find the defendants duly authorized to assess those taxes.

The plaintiff, having excepted to these rulings and instructions, moves that the verdict returned for the defendants may be set aside, and for a new trial.

*Hatch,* for the plaintiff.

I. The instruction of the court respecting the agreement admitting debts due the plaintiff, was erroneous. There was no evidence that the sums named in it, bore interest. Comp. Stat., chap. 41, sec. 4. It was proved that the debt from Odell bore interest, but that fact had no tendency to show that the other sums bore interest. If it had, then, in the absence of the written acknowledgement, the testimony of Odell, added to proof that the other persons named were indebted merely to the plaintiff, would have authorized the jury to find that all the debts were on interest. The writing contains an agreement, that it may be used, " on the trial," not stating on what trial, nor in what court, nor for what purpose. Is it possible to infer from this fact that the debts were on interest ?

Interest is not appurtenant to all debts due, perhaps not to most. It is as legitimate to infer that the debts were to bear ten or twelve per cent. interest, as to infer that they bore interest at all. The only safe rule of construction is, to take the writing to mean just what it expresses, and no more. If it may be enlarged or diminished by construction, no written instrument can safely be made, or relied on, as expressing a party's true intention. If the trial referred to in the writing was the trial in this case, the paper is an admission of the plaintiff, gratuitously given, and against his interests. It is not a contract to be construed most strongly against the maker, but an admission not to be enlarged by construction. And this rule of construction is never applied to affect the apparent intention of the

parties, as it is to be collected from the instrument itself. And it is considered a rule of some strictness and rigor, and is the last to be resorted to. Chit. Con., 79, and cases cited. And it is observable that this admission was made by the party personally, and without the aid or advice of counsel.

It was ruled, not long since, in Strafford county, that an admission that a deed was signed and sealed by a party, was no evidence of a delivery. 1 Greenl. Ev., sec. 277. Courts cannot put words in an instrument which are not there, nor put a construction on words directly contrary to the plain sense of them. Per *Willes, J., Parkhurst* v. *Smith*, Willes 332 ; Chit. Con. 66, 73.

However capricious the intention expressed, every court is bound by it, unless plainly controlled by other parts of the instrument. Per V. C., *Hume* v. *Rundell*, 1 S. & S. 177.

It is not allowable to interpret what has no need of interpretation. *Quoties in verbis nulla est ambiguitas, ibi nulla expositio contra verba fienda est.* Co. Litt. 147, a ; Chit. Con. 81.

II. The agreement with Sophia Gordon was improperly introduced. It was immaterial to the issue. It had no legitimate tendency to prove that the plaintiff owned any property, and it could be admissible for no other.

III. The deposition of Way was improperly admitted.

1. It was taken on insufficient notice. See 20th Rule of Court. By the rule the plaintiff was entitled to three days' notice, and three days more for the distance, which was over fifty miles, exclusive of one Sunday, and of the day of service and caption. The notice was served Monday, October 29, and the deposition taken Monday, November 5, five days.

2. The plaintiff was notified to attend the caption of this deposition in Boston, November 5, and of others in Stratham, November 6, at a place fifty-five miles distant, and twelve miles from the residence of his attorney in Portsmouth. This was a direct violation of the spirit of the statute, and of the rule which requires notice to be given at all. It may or may not have been possible for the plaintiff to have attended both

captions. He was not bound to do so, and if he must attend either, he had his election, and did actually attend on the 6th at Stratham.

IV. The transaction between James Scammon and the selectmen of Stratham, in reference to the note of $1601, should not have been admitted in evidence. James Scammon may have forgotten the note, thought it bad, or wilfully omitted it from his inventory. For none of these things was the plaintiff responsible ; nor do they legitimately tend to show that the plaintiff did not regard himself bound, or was not actually bound on the note. *Res inter alios acta alteri nocere non debet*, which Mr. Best terms a " just principle" of our law. Best on Ev. 120.

V. The warrants from the State and County treasurer were not properly proved, nor was the best evidence of their contents produced. The treasurer might have been called, or their record produced.

*Marston*, for the defendant.

I. When it is considered that the question to be tried was, whether Scammon had $750 at interest more than he paid interest for, which he had wilfully omitted to give in, and that the agreement was made by the parties for the sole purpose of being evidence in the case, and to save the expense of summoning the persons named therein, it cannot be doubtful that it was properly left to the jury to say, whether the plaintiff had the amount of the several sums on hand, or at interest.

II. The agreement to pay Sophia Gordon $10,000, and the evidence that the plaintiff's wife inherited property from her father, was introduced and left to a jury, upon a former trial of this cause, under the same instructions as now, and by the Superior Court the ruling was sustained. *Scammon* v. *Scammon*, 8 Foster 433.

III. The notice to take the deposition of Way was sufficient. The rule does not allow an additional day for any fractional miles, however small, but only for an additional twenty miles.

IV.   The evidence about the note of $1601 was competent, as tending to show that nothing was due upon it, and that fact being established, the jury might well infer that the plaintiff knew it.

BELL, J.   The written admission of the plaintiff was competent evidence of all that could be justly inferred from it.   Upon the common principle that an admission, made for the purpose of preventing other evidence from being resorted to, should, in case of doubt or ambiguity, be construed most strongly against the party making it, the jury were at liberty, if the language was equivocal, to judge of it under the light of all the surrounding circumstances, and to draw such inferences from it as were calculated to give it a reasonable effect and operation, *ut res magis valeat quam pereat.*   This writing is ambiguous in several particulars.   It is not said in what trial nor in what court the admission is to be used, and nothing is said, whether the debts admitted were on interest or not.   The jury might look at the purpose for which this writing was given ; that a trial of this case was then in anticipation, and that the question to be tried was, whether the plaintiff had debts due to him, bearing interest, which he had not given in his invoice, and that no other debts were of any importance ; and they would be fully justified in drawing the inference that the trial referred to was the trial of this cause, and that the debts intended were debts material in that case ; that is, debts bearing interest, just as they might understand the admission to apply to the whole years, 1849 and 1850, though its literal construction might be satisfied if it was true in any part of those years.   The instruction of the court on this point seems to us correct.

The proof as to the property of the plaintiff's wife, derived from her father's estate, and the proof of the purchase of a large amount of property from her mother, for which he is only conditionally liable to pay any thing, as shown by his obligation, recited in the case, had a direct tendency to show large means, and though not direct proof of money at interest, it had a ten-

dency to confirm the inference arising from the admission, and a similar tendency to disprove the existence of debts due from the plaintiff to others.

The evidence relating to the note of James Scammon was admissible to show that the plaintiff's note was paid. It was equivalent to an admission by James Scammon that the plaintiff did not owe him any thing, which would be clearly competent evidence for the plaintiff, to resist the supposed note, and for that reason would be competent for others to disprove the debt. The statements of the parties themselves, as to the dealings between them, are evidence against themselves, and to that extent in favor of others.

Proper search was shown to be made for the warrants of the State and County treasurer, for assessing the State and County taxes, and it was shown none could be found. Parol evidence showed that such warrants were in fact received by the selectmen, and it was competent to prove the contents of them by parol. The evidence on this subject went no further than that they were warrants for the State and County taxes for that year; and it was conceded that the taxes were in fact made for the just proportions of the town of those taxes; and we think that from these facts the jury were fully justified in drawing the conclusion that the warrants were for the just amounts to be assessed on the town, according to the law then in force; and the instructions of the court on this point were correct.

It is contended that the notice of taking depositions at Boston was insufficient. The 20th general rule prescribes that "no notice to the adverse party of the taking of depositions shall be deemed sufficient, unless served three days, exclusive of the day of service and the day of caption, before the day on which they are taken. In computing the time of service of the notice, the Sabbath is to be excluded, whenever the notice is served less than seven days prior to the day of the caption. And when the adverse party shall live more than ten miles from the place of caption, one day more shall be allowed for every additional twenty miles; provided, however, that twenty days shall be

deemed sufficient in all cases." It is conceded, that if an additional day is required for a fractional part of twenty miles, the notice was insufficient. The impressions of the bar vary as to this question, and it has never been decided.

In taxing costs, the practice has been to allow for fractions of ten miles, and the practice is similar in the case of the members of legislative bodies. And the practice has been too long settled to be disturbed. But there is a difference of phrase, which seems designed, and may well lead to a different construction in this case. It is not said every twenty miles, as if twenty miles was a unit admitting no fractions, but it is, every additional twenty miles ; the natural import of which is, that no additional day is to be required, unless twenty miles in full are added. And we are of the opinion that this is the true construction to be adopted.

The practice as to taking depositions on successive days is governed by no rule of court. It is a question of reasonable notice, and reasonable opportunity to be present. This is not to be judged of at this day by mere distances, as would formerly have been the case. The facilities of traveling must now be regarded ; and as the modes of communication are stated in the case, we cannot say that there would necessarily be any difficulty in a party attending the taking of a deposition at Boston on one day, and at Exeter on the next. Probably two hours in time may be regarded as the distance practically between those places. If there was a well founded objection to the notices on this account, we think that objection applies to the second day, and not to the first. For the first day the notice was ample, and there was no reason the party should not attend. If, in consequence of the time occupied in taking the depositions at Boston, or the lateness of the hour at which the taking was closed, there was any practical difficulty in attending at Exeter, that would be a good reason for objecting to the depositions taken there. But the objections to the deposition taken at Boston must be overruled.

*Judgment on the verdict.*